JANVIER, Judge.
Plaintiffs, Daniel Jackson Cotton and his wife, Letha Demarise Cotton, were the parents of a 22-year old daughter who was killed in an automobile accident, which occurred at about 7:15 on the clear morning of May 10, 1964, a few miles north of LaPlace, Louisiana, on what is commonly known as the Airline Highway.
There were two vehicles involved in the accident — the first, driven by one of the defendants, Bartoneau, and the other, driven by another defendant, Gremillion. Bar-toneau was driving in a westerly direction and intended to-turn to a road to his left through an opening in the narrow neutral ground to inspect a picket of a strike which was in progress in an industry on the other side of the road. When he reached the break in the neutral ground which permitted the left turn, he had commenced the turn by turning slightly to his left and was proceeding either slowly or had stopped to let a vehicle going in the other direction on the other side of the highway pass when his car was struck violently in the rear by a car driven by Gremillion, in which car the daughter of plaintiffs was a guest passenger. Both Gremillion and Miss Cotton were thrown from the Gremillion car. He was seriously injured and she was killed.
The parents of Miss Cotton brought this suit against Bartoneau and Miller’s Mutual Fire Insurance Company of Texas and also against Gremillion, alleging that the accident had resulted from the negligence of both Bartoneau and Gremillion, and that Miller’s Mutual Fire Insurance Company of Texas was the insurer of Bartoneau. They prayed for judgment against all three defendants in solido in the sum of $50,000.00, including funeral and medical bills.
Bartoneau and the insurance company denied any negligence on the part of Bar-toneau, and, by third-party action, alleged that the accident had been caused solely by the negligence of Gremillion, and they prayed that should there be any judgment against Bartoneau, Gremillion should be forced to contribute. Gremillion answered, denying that there had been any negligence on his part.
There was judgment against both Bar-toneau and Gremillion, in solido, and in fa-yor of Mr. and Mrs. Cotton awarding damages to each in the sum of $2,500.00; also dismissing plaintiffs’ demands against the Insurance Company and the third-party demands of Bartoneau against Gremillion. Plaintiffs’ claim for funeral bills, etc., was also denied.
Bartoneau alone appealed devolutively and suspensively, and Mr. and Mrs. Cotton answered this appeal, praying for an increase in the amounts awarded.
It appeared that the insurance company would be liable only in the event that another insurer, with whom Bartoneau’s organization had secured a policy, should be held liable in an amount in excess of its coverage. The other insurance company *19 was not made defendant, and the District Judge found that even the amounts prayed for did not exceed the limits of the first policy and that, therefore, the Miller’s Mutual Fire Insurance Company of Texas could not be held liable.
The record leaves not the slightest doubt that the accident was caused solely by the negligence of Gremillion and that nothing that Bartoneau did or failed to do contributed in any way to the unfortunate occurrence. In fact, the reasons given by the trial Judge indicate very plainly what the facts were and from these facts there is no doubt at all that Bartoneau’s behavior had absolutely nothing to do with the accident.
Bartoneau was driving up the Airline Highway and had reached a point where one of the pickets, already referred to, had been stationed; he waived to that picket and proceeded at a slow speed of 15 to 25 miles an hour, and had gone a distance of possibly a half mile, when he reached the second break in the neutral ground. Before reaching that second break in the neutral ground he had turned his indicator lights on to indicate an intention to turn to his left, and had waved to persons on the other side of the roadway.
The District Judge found that, as Bar-toneau was about to reach the point at which he intended to turn left, his signal light indicating a left turn was flashing; that he was signalling with one of his arms to the people on the other side of the road; that he had turned slightly to his left awaiting the passage of an automobile going in the other direction on the other roadway when he was struck violently from the rear by the Gremillion car.
The District Judge said: “There appears no doubt but that Gremillion maintained no lookout, was inattentive to his surroundings and careless in the operation of his vehicle. His negligence was a proximate cause of the accident.”
He found that Bartoneau was at fault in that he had not looked to his rear before attempting to make the turn to make sure that no other car was immediately behind him. We do not see that anything .could have been accomplished had Bartoneau looked to his rea.r and feel that he did all 'that should have been done. In fact, the Judge, referring to the action of Bartoneau, said:
“ * * * he stopped on the inner lane and inspected the first picket line: Then at snail’s pace he proceeded along the inner lane with his left blinker operating, flicking his headlights off and on, waving his hand, inspecting the pickets on the opposite side of the highway and doing everything possible to attract the attention of occupants of a vehicle travelling the New Orleans bound traffic lanes: He then stopped again at the second picket line and then proceeded slowly to the gap and began his left-turn.”
In holding that there was negligence in that Bartoneau attempted a left turn, which is a very dangerous maneuver, the District Judge quoted the following from Sonnier v. Great American Insurance Company, La. App., 134 So.2d 363:
“Also, a motorist intending to make a left turn on a public highway must not be content with merely holding out his hand or putting on his directional light, but he should look before turning to first see if such movement can reasonably be made in safety. Johnson v. Wilson, 1960, 239 La. 390, 118 So.2d 450; Jenkins v. Fidelity and Casualty Co. of New York, La.App., 1 Cir., 1957, 92 So.2d 120; Johnson v. Southern Farm Bureau Casualty Insurance Co., La.App., 3 Cir., 1960, 124 So.2d 331.”
We do not think this rule has any application here. It is true that Bartoneau said that, when he had looked to the rear at the first intersection at which he saw the first picket, he had seen the Gremillion car a great distance to the rear and that he had not looked again, but, as already stated, the record shows that for almost half a mile he proceeded at a slow speed with his blinker *20 lights showing and signalling with his hand. What more he should have done we do not know.
Gremillion was asked whether there was any reason why he “suddenly crashed into the rear of the Bartoneau car,” and he answered: “My reason I have he just didn’t give me enough time to get around him. I was in the left lane, he just slowed down, I presume, and I hit him.”
Accordingly, we find that Gremil-lion alone was at fault.
The contention of counsel for plaintiffs in their answer to the appeal of Bartoneau that the amount should be increased is of no avail since there was no appeal taken by plaintiffs from the judgment insofar as it runs against Gremillion. As we have said, only Bartoneau took the appeal from the judgment in favor of plaintiff and against Bartoneau and Gremillion, in solido, and in answering this appeal of Bartoneau the plaintiffs made no reference to Gremillion. In McKnight v. Scott, 130 So.2d 681, the Court of Appeal for the First Circuit considered this identical question. The syllabus indicátes with exactitude what the Court held:
“A plaintiff’s answer to an appeal perfected by only one defendant from a judgment entered against two defendants in solido, could apply only to the appeal perfected by the appealing defendant, and under such circumstances judgment for plaintiff against nonappealing defendant was final.”
And in its opinion the Court said:
“In view of the fact that Elvira Scott did not appeal from the judgment in favor of the plaintiff and against her, the answer to the appeal by the plaintiff can only apply to the appeal perfected by the codefendant Elmo Augustus, Elvira Scott occupies the same status as appel-lee before this court as the plaintiff which resulted from the appeal taken by the codefendant Elmo Augustus. Under the circumstances the judgment for plaintiff against Elvira Scott is final. Plaintiff’s remedy if she wished it changed in any respect was by an appeal from the judgment in her favor as against Elvira Scott. We can therefore only consider the appeal taken by the defendant Elmo Augustus and the answer to that appeal by the plaintiff. See Steckler v. Spicuzza, 15 La.App. 485, 132 So. 382; Breaux v. Laird, 230 La. 221, 88 So.2d 33.”
Therefore, the judgment, insofar as it runs against defendant Bartoneau, is annulled, avoided and reversed and the suit is dismissed at the cost of appellants. Since there was no appeal by the plaintiffs or Gremillion, the judgment as against Gre-million is final.
Reversed.